NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MR. RENE D. EDWARDS, | : | |
| | : | Civil Action No. 13-0833(NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BAYSIDE STATE PRISON, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

Rene D. Edwards
Southern State Correctional Facility
4295 Route 47
Delmont, NJ  08314
     Plaintiff pro se

**HILLMAN,** District Judge

    Plaintiff Rene D. Edwards, a prisoner confined at Southern

State Correctional Facility in Delmont, New Jersey, seeks to

bring this action in forma pauperis pursuant to 42 U.S.C.

§ 1983, alleging violations of his constitutional rights.[1]

_____

[1] Based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. § 1915(g), the Court will
grant Plaintiff's application to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the
Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint [1] and proposed Amended Complaint [11],[2] as supplemented by various attachments, and are accepted as true only for purposes of this review.  On or about July 20, 2011, Plaintiff was transferred for medical reasons from an upper tier cell to a bottom tier, bottom bunk cell.  During the move, some undescribed property disappeared from Plaintiff's cell. Plaintiff contends that Correctional Officer A. Madden allowed Plaintiff's property to be given to other inmates on the unit.

---

[2] Plaintiff's Motion [11] to amend his Complaint, by adding to the original Complaint the information contained in the proposed Amended Complaint [11], will be granted.  The Motion [19] to amend is a photocopy duplicate of the Motion docketed as Docket Entry 11, and will be denied as moot.

2

Plaintiff also alleges that Sgt. H. Shelton was displeased about the move and expressed his disapproval by spitting in Plaintiff's face and calling him a racial epithet.  Plaintiff alleges that he filed an administrative complaint about Sgt. Shelton and, for that reason, prison officials retaliated by failing to resolve his claim for lost property.  More specifically, Plaintiff asserts that Defendants Chief Bass and Major Redman were assigned to investigate his claim, but failed to do so in order to protect the illegal actions of co-workers. Plaintiff further asserts that Captain Varrell was grossly negligent in supervising his employees who committed the allegedly wrongful acts described above.

Finally, Plaintiff contends that Defendant Asst. Superintendent Suzanne Lawrence should have ordered relief, but instead, "out of spite," gave Plaintiff's property, or allowed it to be given, to another inmate.

Plaintiff's attachments include a memorandum from the State of New Jersey Office of the Corrections Ombudsman, dated August 30, 2012, advising Plaintiff that he appears to have followed the appropriate administrative claim procedures regarding his lost property, that the Office of the Corrections Ombudsman has referred Plaintiff's concerns on several occasions to the administration of Bayside State Prison and has not received a response, and that Plaintiff's next recourse is to take the

matter to the Appellate Division of the New Jersey Superior Court. (Document No. 11, Amended Complaint, Attachment, Page ID 134.)

In addition to the individuals named above, Plaintiff names as Defendants Bayside State Prison, Commissioner Gary M. Lanigan, Administrator John Powell, Nurse N. Gottwald, and "All Un-Named John Does, C/O's & Sgt. Lt. of Second Shift 1-to-20, I/J/S/A, ABC Entities." Plaintiff seeks damages in the amount of $10,000,000.00.[3]

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires

---

[3] Also pending are three Motions [12, 13, 16] in which Plaintiff asks this Court to order the Defendants to answer the Complaint. See, e.g., 42 U.S.C. § 1997e(g)(2) ("The court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits.").

more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will
not do ... .  Factual allegations must be enough to
raise a right to relief above the speculative level
... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

That is, a complaint must assert "enough facts to state a

claim to relief that is plausible on its face."  Id. at 570.  "A

claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 556).  The determination of whether the factual

allegations plausibly give rise to an entitlement to relief is

"'a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.'"  Bistrian v.

Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted).

Thus, a court is "not bound to accept as true a legal conclusion

couched as a factual allegation," and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678

(citations omitted).

In determining the sufficiency of a pro se complaint, the

Court must be mindful to accept its factual allegations as true,

see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir.

2012), and to construe it liberally in favor of the plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

In general, where a complaint subject to statutory screening can be remedied by amendment, a district court should not dismiss the complaint with prejudice, but should permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (noting that leave to amend should be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"), cited in Thomaston v. Meyer, 519 F. App'x 118, 120 n.2 (3d Cir. 2013); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV.  ANALYSIS

A.  Vicarious Liability

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "Á defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

7

Plaintiff makes no factual allegations against Commissioner Gary M. Lanigan and Administrator John Powell.  Instead, it appears that Plaintiff is basing his claims against these Defendants on an untenable theory of vicarious liability. Accordingly, these claims will be dismissed.

B.    Bayside State Prison

Plaintiff has named Bayside State Prison as a Defendant in this action.  The Eleventh Amendment to the U.S. Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).  See

also Hurst v. City of Rehoboth Beach, 288 F.App'x 20, 24-25 (3d Cir. 2008) (citing Edelman, Pennhurst, and Quern).

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors:  (1) the source of the agency's funding, i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency under state law, and (3) the degree of autonomy from state regulation.  See Flitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir.) (en banc), cert. denied, 493 U.S. 850 (1989).

Courts in this District have uniformly held that New Jersey state prison facilities are arms of the state entitled to Eleventh Amendment immunity.  See, e.g., Love v. Dept. of Corrections, Civil No. 13-1050, 2014 WL 46776 (D.N.J. Jan. 6, 2014); Jones v. Central Reception and Assignment Facility, Civil No. 12-0041, 2013 WL 4588775 (D.N.J. Aug. 27, 2013); Cipolla v. Hayman, Civil No. 10-0889, 2013 WL 1288166, *5 (D.N.J. March 26, 2013).  Accordingly, the claim against Bayside State Prison will be dismissed with prejudice.

C.   The Retaliation Claim

Plaintiff contends that various defendants failed to act on his claim for lost property in retaliation for the complaint he filed against Sgt. Shelton.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To state a claim for retaliation, a plaintiff must plead facts showing "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (alteration in original; citations and internal quotations omitted).

With respect to the second element – deterrence – Plaintiff has failed to allege facts suggesting that the failure to reimburse him for lost property was sufficient to deter a person of ordinary firmness from continuing to exercise his constitutional rights.  Certainly, based on the attachments to the Complaint and Amended Complaint, Plaintiff continued to challenge the lack of reimbursement both within the institution and through the Office of the Corrections Ombudsman.  Moreover, Plaintiff has since brought several federal lawsuits challenging various aspects of his confinement.  See, e.g., Edwards v. Falvey, Civil No. 14-5753 (D.N.J.); Edwards v. V.C.C.B. Board Members, Civil No. 13-3635 (D.N.J.); Edwards v. State of New Jersey, Civil No. 13-0214 (D.N.J.).  It does not appear, then,

that the pecuniary loss of a few hundred dollars' worth of personal property is sufficient to deter a person of ordinary firmness from continuing to exercise his constitutional right to challenge the conditions of his confinement.

With respect to the third element – causation - a Plaintiff must establish that the constitutionally protected conduct was "a substantial or motivating factor" in the adverse action; the burden then shifts to the defendant to prove by a preponderance of evidence that it would have taken the same action even in the absence of the protected activity.  See Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001) (citing Mount Health Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)).  To satisfy the Iqbal "facial plausibility" standard with respect to a retaliation claim, a plaintiff must allege "'a chronology of events from with retaliation may be inferred.'"  Bendy v. Ocean County Jail, 341 F.App'x 799, 802 (3d Cir. 2009) (citation omitted).  A mere temporal connection between the exercise of a constitutional right and adverse action, however, is "too thin a reed" on which to hang a retaliation claim.  See Gans v. Rozum, Civil No. 06-62J, 2007 WL 2571527, *6 (W.D. Pa. Aug. 31, 2007), aff'd, 267 F.App'x 178 (3d Cir.), cert. denied, 555 U.S. 844 (2008).  Cf. Lopez v. Beard, No. 08-3699, 2009 WL 1705674 (3d Cir. June 18, 2009) (allegation that denial of visitation on two occasions was in retaliation for filing grievances is frivolous).

11

Thus, the allegations of retaliation are not sufficient to raise Plaintiff's right to relief "above a speculative level." This claim will be dismissed without prejudice.

D.   The Deprivation of Property Claim

Plaintiff asserts that several defendants either gave his property to other inmates, or allowed his property to be given to other inmates, or failed to properly investigate his deprivation-of-property claims.

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).  In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.[4]

---

[4] But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees

12

Here, if the actions of the defendants were unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001).  In addition, as Plaintiff admits, he had an administrative grievance procedure available to him.  Although he contends that certain defendants were thwarting the administrative remedy, he had the ability to appeal the non-action to the Appellate Division, as he was advised.  See N.J. Const. Art. VI, Sec, 5, para. 4; Trantino v. New Jersey State Parole Board, 296 N.J. Super. 437, 459-460 (App. Div. 1997), modified on other grounds and affirmed, 154 N.J. 19 (1998); Johnson v. State Parole Board, 131 N.J. Super. 513, 517-18 (App. Div. 1974), certif. denied, 67 N.J. 94 (1975); N.J. Ct. R. 2:2-3(a)(2).  See also Petrucelli v. Dept. of Civil Service, 28 N.J. Super. 572, 575 (App. Div. 1953) ("The import of the rule embraces official administrative conduct of a negative character as well, such as, for example, the refusal to consider a meritorious petition, or to conduct a hearing, or to render any decision in a controversial cause appropriately before the [agency].").

_____

from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

13

Plaintiff has alleged no facts suggesting that the defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J. Admin. Code §§ 10A:1-11.1 et seq. (2001).

It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation-of-property claim. Accordingly, it will be dismissed with prejudice.

E.   Eighth Amendment Harassment Claim

Plaintiff asserts that Defendant Sgt. H. Shelton spit on him and called him a racial epithet.  To the extent he is seeking to assert a claim for excessive force in violation of the Eighth Amendment, these allegations are not sufficient to state a claim.

As the Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society."  Hudson v. Palmer, 468 U.S. 517, 528 (1984). The Eighth Amendment protects prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation. See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation);

14

Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988). Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-89 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988).

Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.  <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him). However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  <u>Douglas</u>, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); <u>see also</u> <u>Northington v. Jackson</u>, 973 F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head); <u>Burton v. Livingston</u>, 791 F.2d 97 (8th Cir. 1986) (guard threatened to shoot prisoner).

Here, the allegation that Defendant Sgt. Shelton spit on Plaintiff, in addition to verbally harassing him, is not sufficient to raise the allegations of verbal harassment to the level of an Eighth Amendment violation.  The act of spitting on Plaintiff is not comparable to the threats to kill, coupled with use of a deadly weapon, that have been found sufficient to raise a claim of verbal harassment to the level of an Eighth Amendment violation.  <u>See</u>, <u>e.g.</u>, <u>JCG v. Ercole</u>, Civil No. 11-6844, 2014 WL 1630815, *17 n.5 (S.D.N.Y. Apr. 24, 2014) (holding that verbal harassment, accompanied by spitting, does not state a claim for violation of the Eighth Amendment), <u>report and recommendation</u>

16

adopted, 2014 WL 2769120 (S.D.N.Y. June 18, 2014).  Cf.
McCullough v. Miller, Civil No. 06-0514, 2008 WL 4361254, at *7
(W.D. Pa. Sept. 24, 2008) (holding that an assault by spitting
is not enough to state an Eighth Amendment claim) (collecting
cases), aff'd, 330 F. App'x 330 (3d Cir. 2009); Morgan v.
Godinez, Civil No. 13-0182, 2013 WL 1143304, *4 (S.D. Ill. March
19, 2013) (holding that spitting does not rise to the level of
force needed to sustain an Eighth Amendment claim) (citing
Wilkins v. Gaddy, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010) (the
question is whether the force used was de minimis and not "every
malevolent touch by a prison guard gives rise to a federal cause
of action") and Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)
(the de minimis use of physical force does not violate the
Constitution, provided that the use of force is not of a sort
"repugnant to the conscience of mankind")).  Accordingly, this
claim will be dismissed with prejudice.

F.   Claim of Negligent Supervision

    Plaintiff contends that Captain Varrell was grossly
negligent in supervising his employees who verbally harassed
Plaintiff (purportedly in violation of the Eighth Amendment),
and in supervising those who took Plaintiff's property, or who
allowed it to be distributed to other inmates, or who failed to
properly investigate the loss of his property (purportedly in
violation of the Fourteenth Amendment Due Process Clause).

17

The Court of Appeals for the Third Circuit historically has recognized two theories of supervisory liability applicable to civil rights actions.

> Individual defendants who are policy makers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). ....

> The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004).

As the Supreme Court has noted, in civil rights actions, the concept of supervisory liability is not to be equated with a supervisor's vicarious liability for the misdeeds of subordinates.

> In a § 1983 suit or a Bivens action -- where masters do not answer for the torts of their servants -- the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).

After Iqbal, the Court of Appeals has recently revisited the scope of supervisory liability in the Eighth Amendment

18

context.  See Bates v. First Correctional Medical, Inc., 766
F.3d 307 (3d Cir. 2014).  There, the Third Circuit held that
Iqbal did not abolish supervisory liability in its entirety.
Rather, the Third Circuit "agree[d] with those courts that have
held that, under Iqbal, the level of intent necessary to
establish supervisory liability will vary with the underlying
constitutional tort alleged.  [Thus, where] the underlying tort
is the denial of adequate medical care in violation of the
Eighth Amendment's prohibition on cruel and unusual punishment,
... the accompanying mental state is subjective deliberate
indifference."  Barkes, 766 F.3d at 320 (citation omitted).  The
Third Circuit "[left] for another day the question whether and
under what circumstances a claim for supervisory liability
derived from a violation of a different constitutional provision
remains valid."

     Here, there is no basis for a claim of supervisory
liability under any of the foregoing standards, as Plaintiff has
not stated a claim for deprivation of his property without due
process or for a violation of the Eighth Amendment prohibition
against cruel and unusual punishment.  Accordingly, the claims
against Captain Varrell will be dismissed with prejudice.

G.   Claim Against Nurse N. Gottwald

     In the text of the Complaint and Amended Complaint,
Plaintiff makes no factual allegations against Defendant Nurse

N. Gottwald.  One attachment to the Amended Complaint, a "Preliminary Incident Report," dated July 20, 2011, indicates that Nurse Gottwald was brought to Plaintiff's cell to evaluate his vital signs after he reported being "beat on" while moving his cell contents.  To the extent Plaintiff has attached this "Preliminary Incident Report" to suggest that he has a claim against Nurse Gottwald for unconstitutionally deficient medical care, in violation of the Eighth Amendment, he fails to state a claim, as there is no suggestion that Nurse Gottwald did anything but properly assess his vital signs.  To the contrary, the "Preliminary Incident Report" reflects that the nurse "did assess inmates [sic] vital signs," and that Plaintiff asked to have his chin looked at the next morning.  (Document No. 11, Attachment, "Preliminary Incident Report," Page ID: 122.)

To set forth a cognizable claim for violation of a prisoner's Eighth Amendment right to adequate medical care, an inmate must allege:  (1) a serious medical need, and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle v. Gamble, 429 U.S. 97, 103-04, 106 (1976).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong

handicap or permanent loss.  See Hudson v. McMillian, 503 U.S.

1, 9 (1992); Monmouth County Correctional Institutional Inmates

v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486

U.S. 1006 (1988).  "Deliberate indifference" is more than mere

malpractice or negligence; it is a state of mind equivalent to

reckless disregard of a known risk of harm.  Farmer v. Brennan,

511 U.S. 825, 837-38 (1994).  Moreover, a prisoner's subjective

dissatisfaction with his medical care does not in itself

indicate deliberate indifference.  Andrews v. Camden County, 95

F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp.

137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).

Here, Plaintiff has alleged no facts suggesting either a serious

medical need or deliberate indifference to that need.

Accordingly, this claim will be dismissed.

H.    Claims Against Fictitious Defendants

      Plaintiff also seeks to assert claims against the

fictitious defendants described as "All Un-Named John Does,

C/O's & Sgt. Lt. of Second Shift 1-to-20, I/J/S/A, ABC

Entities."

      With respect to these fictitious defendants, however,

Plaintiff has failed to allege either any identifying

characteristics or any facts suggesting that they violated his

constitutional rights.  Although fictitious defendants "'are

routinely used as stand-ins for real parties until discovery

21

permits the intended defendants to be installed,'" <u>Hindes v.</u>
<u>FDIC</u>, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted), the
complaint must contain factual allegations describing the
fictitious defendants and their actions.  See <u>Kates v. Bridgeton</u>
<u>Police Department</u>, Civil Action No. 10-6386, 2011 WL 6720497, *1
n.1 (D.N.J. Dec. 21, 2011); <u>Smith v. Creative Resources, Inc.</u>,
Civil Action No. 97-6749, 1998 WL 808605, *1 n.2 (E.D. Pa. Nov.
23, 1998).  See also <u>Beale v. Department of Justice</u>, Civil
Action No. 06-2186, 2007 WL 327465, *8 (D.N.J. Jan. 30, 2007)
(noting that a plaintiff cannot maintain an action solely
against unnamed parties where the plaintiff has failed to
describe the fictitious defendants, or their actions,
sufficiently to enable naming them at a later date).  Here,
Plaintiff has failed to allege any facts that would permit
naming the fictitious defendants at a later date.  Accordingly,
the claims against the fictitious defendants will be dismissed
with prejudice.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, all claims will be
dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a
claim.  However, because it is conceivable that Plaintiff may be
able to supplement his pleading with facts sufficient to state a
claim for retaliation, the Court will grant Plaintiff leave to

file an application to re-open accompanied by a proposed amended complaint.[5]  An appropriate order follows.

At Camden, New Jersey                    s/ Noel L. Hillman
                                    Noel L. Hillman
                                    United States District Judge

Dated:  December 9, 2014

---

[5]  Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases).  See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  Id.